JUDGE SCHEINDLIN

14 CV 8953

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ISAAC WILDER and FREE NETWORK FOUNDATION,

                              Plaintiffs,           COMPLAINT
                                            (Jury Trial Demanded)

    -against-

CITY OF NEW YORK, MICHAEL BLOOMBERG, in his
individual capacity as former Mayor of the City of New
York, RAYMOND KELLY, in his individual capacity as
former Police Department Commissioner, and JOHN
DOHERTY, in his individual capacity as former Sanitation
Department Commissioner,

                              Defendants.
------------------------------------------------------------X


RECEIVED NOV 10 2014 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiffs Isaac Wilder and Free Network Foundation, by their attorney Scott A. Korenbaum, Esq., for their Complaint, allege as follows:

INTRODUCTION

       1.    Plaintiffs Isaac Wilder and Free Network Foundation bring this action, pursuant to 42 U.S.C. § 1983, to vindicate the violation of their rights protected by the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiffs were deprived of their federally protected rights when members of the New York City Police Department (the "Police Department") and the New York City Department of Sanitation (the "Sanitation Department"), acting pursuant to official policy established by former New York City Mayor Michael Bloomberg and under the direction of former Commissioners Raymond Kelly and John Doherty, conducted a surprise night time raid of Zuccotti Park.

       2.    As part of the raid, defendants seized and retained possession of personal property belonging to the plaintiffs, including at least approximately itemized units of electronic

equipment ("live streaming equipment") utilized for the purpose of First Amendment activity, namely "live streaming," or contemporaneously broadcasting via internet, expressive activities of Occupy Wall Street ("OWS") and OWS participants, computer hardware and software, intellectual property, and other personal items, including currency. All of the items seized were either lost or destroyed.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as plaintiffs' claims arise under federal law. Pursuant to 28 U.S.C. § 1391(b), venue is proper as a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in Manhattan.

## PARTIES

4. Free Network Foundation is a non-profit organization that works to ensure that all people have affordable access to an internet free of censorship and surveillance. It engineers tools, develops educational resources and facilitates the deployment of networks owned, operated and governed by the communities that use them. It is established in accordance with the laws of Missouri.

5. Mr. Wilder is a citizen of the United States. He resides in the State of Missouri. Mr. Wilder is presently the Chairman of the Board of Directors of Free Network Foundation.

6. Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York.

7. Defendant Michael Bloomberg was, at all relevant times, the Mayor of the City of New York. The Mayor is the chief executive officer of New York City. As such, Mr. Bloomberg

was responsible for the actions and policies of the Police and Sanitation Departments, and, *inter alia*, the effectiveness and integrity of the City's government operation. Pursuant to the New York City Charter, he was required to establish and to maintain such policies and procedures as were necessary and appropriate to accomplish this responsibility. Mr. Bloomberg is sued in his individual capacity.

8. Defendant Raymond Kelly was, at all times relevant herein, the Police Department's Commissioner. He was appointed by the Mayor, was the chief executive officer of the Police Department, and, among other duties, was responsible for the actions and policies of the Police Department and for the execution of all the laws and the rules and regulations of the State, City and the Police Department. He is sued in his individual capacity.

9. Defendant John Doherty was, at all times relevant herein, the Sanitation Department's Commissioner. He was appointed by the Mayor, was the head of the Sanitation Department, and, among other duties, was responsible for the functions and operations of the City relating to the cleanliness of the streets and the disposal of waste, and for the execution of all laws, rules, and regulations pertaining to the Sanitation Department. He is sued in his individual capacity.

## FACTS UNDERLYING THE COMPLAINT

10. On or about September 17, 2011, as part of their effort to call attention to their cause, associates of Occupy Wall Street established an encampment in Zuccotti Park, a privately owned public space in Manhattan's Financial District that is bounded by Trinity Place, Liberty Street, Broadway, and Cedar Street. Shortly thereafter, Wilder and Free Network Foundation joined members of Occupy Wall Street and others in Zuccotti Park.

11. Free Network Foundation was the architect and custodian of the Freedom Tower, which operated as the wifi communication tower for Occupy Wall Street participants at the Park. The Freedom Tower was also used by Occupy Wall Street participants to provide general connectivity so that people could use all forms of online media. Mr. Wilder was, at all relevant times, its Executive Director.

12. Prior to the protesters' eviction from the Park on November 15, 2011, which is described below, Wilder was responsible for the maintenance of the Freedom Tower.

13. During the early morning hours of November 15, 2011, member of the Police Department arrived at Zuccotti Park to enforce the removal of all protesters. In accordance with City policy, members of the Police Department announced with a bullhorn and written fliers that all persons occupying the Park must immediately remove all property from the Park and leave the Park on a temporary basis so that it could be cleaned. Protesters were told they would be allowed to return when this work was complete. The Police Department also announced that property that was not removed would be seized and transported to a Sanitation Department garage located on 57th Street, where it could be recovered with proper identification.

14. Protesters were warned that those who failed to leave Zuccotti Park or interfered with efforts to remove property from the Park would be subject to arrest. Approximately forty five minutes later, members of the Police Department moved through Zuccotti Park clearing protesters. Sanitation Department workers followed, taking possession of all belongings that were left behind. Upon information and belief, 26 Sanitation Department trucks were filled with property they removed from the Park.

15. While this was occurring, Wilder safeguarded the Freedom Tower in the smaller

of two medical tents located at Zuccotti Park. He witnessed the demolition of the medical tents by members of the Police Department and their contents strewn into piles, which were discarded by Sanitation Department personnel.

16. Wilder, along with others in Zuccotti Park, was arrested by members of the Police Department. While effectuating his arrest, a member of the Police Department threw him face down to the ground, forcibly removed his backpack and threw it into the heap of refuse.

17. Following his arrest, Wilder was taken to the 1st precinct. During the arrest to arraignment process, and thereafter, Wilder asked about the location of his property, and that of Free Network Foundation, that had been confiscated. Ultimately, he was told that he could recover his and Free Network Foundation's property at the Sanitation Department Depot (the "Depot") located at 650 West 57th Street, in Manhattan.

18. On November 16, 2011, Wilder went to the Depot, but it was closed. He returned on the morning of November 17, 2011. Upon his arrival, he searched piles of refuse for approximately five hours, but was unable to locate his backpack or property relating to the Freedom Tower.

19. Wilder returned to the Sanitation Depot the next day. He searched for his property for an additional three hours, again without success.

20. Prior to the raid on November 15, 2011, the City did not provide any notice to the protesters that their property would have to be removed from Zuccotti Park. Similarly, before seizing the property of the protesters, Defendants did not provide a hearing or permit for any other pre-deprivation procedure.

21. Plaintiffs were unaware of any emergency situation existing at Zuccotti Park at

during the early morning hours of November 15, 2011. Similarly, neither Wilder's presence nor the Freedom Tower created any emergency situation requiring the seizure and destruction of said property.

22. As a result of their policies, defendants caused members of the Police and Sanitation Departments to seize, lose and/or destroy plaintiffs' personal property, including, among other things, computer equipment, United States currency, digital currency and intellectual property.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983–Unreasonable Seizure of Property)

23. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 22, as if fully set forth herein.

24. On November 15, 2011, members of the Police and Sanitation Departments seized plaintiffs' property. The seizure of said property constituted an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

25. These actions were taken pursuant to official policy, and the decision to take such actions was made by high ranking officials of the City of New York., including defendants Bloomberg, Kelly and Doherty.

26. As a result of the defendants' actions, plaintiffs were harmed.

## SECOND CLAIM FOR RELIEF
(42 U.S.C. § 1983--Deprivation of Property)

27. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 26, as if fully set forth herein.

28. On November 15, 2011, members of the Police and Sanitation Departments seized

plaintiffs' property. Before doing so, they did not provide plaintiffs with reasonable notice and an opportunity to be heard.

29. These actions were taken pursuant to official policy, and the decision to take such actions was made by high ranking officials of the City of New York., including defendants Bloomberg, Kelly and Doherty.

30. The seizure and subsequent destruction of said property constituted a deprivation of plaintiffs' property without due process of law in violation of the Fourteenth Amendments to the Constitution of the United States.

31. As a result of the defendants' actions, plaintiffs were harmed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

(a) compensatory damages in an amount to be determined at trial;

(b) punitive damages in an amount to be determined at trial;

(c) reasonable attorneys' fees;

(d) costs and expenses; and

(e) such other and further relief as is just and proper.

Dated: New York, New York
November 10, 2014

SCOTT A. KORENBAUM, ESQ.
Attorney for Plaintiffs
11 Park Place, Suite 914
New York, New York 10007
(212) 587-0018

By: _____
Scott A. Korenbaum